# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CLYDE MCCOY II, | ) | |
| | ) | |
| Plaintiff, | ) | 4:18CV3137 |
| | ) | |
| v. | ) | |
| | ) | |
| COLORADO SPRINGS HOUSING AUTHORITY, NADINE GARCIA, LISA PACHECCO, U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT, NORTH PLATTE HOUSING AUTHORITY, and SHAWNA CARPENTER, Individually And In Her Professional Capacity, Executive Director, | ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendants. | ) | |

After granting Plaintiff leave to proceed in forma pauperis, the court now conducts an initial review of Plaintiff's Complaint and its Supplement to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff's Complaint (Filing No. 1) and Supplemental Complaint (Filing No. 17) allege that Plaintiff and his family "are persons with disabilities who suffer from chronic health conditions expected to end in death." Plaintiff complains that his family's housing assistance was illegally terminated, forcing them to be "left on the streets homeless suffering numerous hospitalizations, denied access to in[-]home health services, denial of safe clean sanitary housing and cooking facilities and denied a [p]lace to store life[-]sustaining medications" and resulting in "the stillbirth of plaintiff['s] child in a public toilet." (Filing No. 1 at CM/ECF p. 4.)

Plaintiff also alleges that the Defendants—the Housing Authorities of Colorado Springs, Colorado, and North Platte, Nebraska, their personnel, and the United States Department of Housing and Urban Development ("HUD")—retaliated against Plaintiff and his family for their participation in "civil rights investigation and enforcement" and because Plaintiff succeeded in obtaining a previous "fair housing settlement" against Defendants. (*Id.*)

As to the Colorado Springs Housing Authority, Plaintiff claims he repeatedly appealed to the HUD Fair Housing and Equal Opportunity office to reinstate his family's housing assistance, but the Authority has "failed to protect" them. Plaintiff asserts that Defendants are deliberately preventing him and his family from participating in "housing programs for persons with disabilities . . . by putting false and misleading information into the HUD EIV reporting system and instructing other public housing agencies to deny the plaintiffs access to[]housing programs." (*Id.*)

As to the North Platte Housing Authority, Plaintiff alleges that the Authority:

• failed to provide "accessible" notices and communication despite being aware that Plaintiff is vision-impaired through his request for accessible notices;

• denied Plaintiff protections and rights afforded to other disabled housing participants, such as "local preference" and "homeless preference/ranking";

• refused to allow Plaintiff and his children to appeal and have a hearing, despite Plaintiff's requests;

• released confidential information to his wife's employer regarding their family, their participation in HUD, and disability and health information;

• discriminated against Plaintiff on the basis of gender by "routinely provid[ing] affordable housing to single mothers without subjecting them to

additional investigation . . . or harassing their family members or the employers of family members who are not on the housing application"; and

- revoked an offer of housing and claimed Plaintiff owed money to HUD once the Authority learned Plaintiff had been a witness in a separate fair-housing-enforcement case.

Plaintiff also alleges that HUD and the North Platte Housing Authority refused to respond to Plaintiff's faxes, phone calls, and emails requesting an "appeal date." (Filing No. 17 at CM/ECF pp. 1-2.)

Plaintiff purports to bring suit under the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, the Americans With Disabilities Act, 42 U.S.C. § 12131, *et seq.*, 42 U.S.C. § 1983, and "HUD Regs HCV Program." He requests $1.5 million dollars in damages and "[r]einstatement of the illegally terminated Housing Choice Voucher." (*Id*. at 5 & Civil Cover Sheet.)

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. General Insufficiencies in Plaintiff's Complaints

#### 1. Lack of Personal Jurisdiction Over Colorado Defendants

Plaintiff's first Complaint (Filing No. 1) names as Defendants the Colorado Springs Housing Authority and two individuals who apparently work for the Housing Authority in Colorado Springs, Colorado—Nadine Garcia and Lisa Pachecco (the "Colorado Defendants")[1]—and describes events that apparently occurred in Colorado. This raises the question whether this court can exercise personal jurisdiction over these nonresident defendants.

A two-step analysis is used to determine whether a court can properly exercise personal jurisdiction over a defendant. *Northrup King v. Compania Productora Semillas Algodoneras Selectas*, 51 F.3d 1383, 1387 (8th Cir. 1995). First, the court must consider whether personal jurisdiction can properly be exercised under the state law of the forum state; more specifically, whether jurisdiction exists under the

---

[1]Plaintiff also sues the Denver, Colorado, office of the United States Department of Housing and Urban Development. Because "[a] suit against a federal agency or against an officer of a federal agency in his or her official capacity constitutes a suit against the United States," *Whaley v. United States*, 82 F. Supp. 2d 1060, 1061 (D. Neb. 2000), I shall not consider this Defendant a "Colorado Defendant" for purposes of this personal-jurisdiction discussion.

state's "long-arm statute." *Id.* "Second, the court's exercise of jurisdiction must be consistent with the due process clause of the Fourteenth Amendment." *Id.* Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution, *Ameritas Inv. Corp. v. McKinney*, 694 N.W.2d 191, 199 (Neb. 2005). Thus, the court need only analyze whether the court may exercise personal jurisdiction over the named Defendants without violating the protections afforded by the Due Process Clause.

"Due process allows a court to exercise personal jurisdiction over a non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice." *Northrup King*, 51 F.3d at 1387 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The plaintiff must demonstrate that the non-resident defendant has had sufficient contacts with the forum state such that the defendant "'should reasonably anticipate being haled into court there.'" *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)).

Plaintiff's initial Complaint (Filing No. 1) lacks any allegations suggesting that any of the Colorado Defendants have any contact or connection to the State of Nebraska. Plaintiff does not describe anything the Colorado Defendants have done in the State of Nebraska that should have caused them to anticipate being sued here. Accordingly, there is no proper basis apparent from the face of the Complaint, as currently drafted, for exercising personal jurisdiction over Defendants Colorado Springs Housing Authority, Nadine Garcia, and Lisa Pachecco.

However, I will grant Plaintiff leave to amend his Complaint to include truthful factual allegations, if any, which establish that Defendants Colorado Springs Housing Authority, Nadine Garcia, and Lisa Pachecco have sufficient contacts with the State of Nebraska such that this court can exercise personal jurisdiction over them. If Plaintiff fails to do so, all claims against these Colorado Defendants will be dismissed. *See Sanders v. United States*, 760 F.2d 869, 872 (8th Cir. 1985) (when an IFP applicant's complaint does not include any allegations supporting personal

5

jurisdiction, the court may properly conclude, *sua sponte*, that the action should be summarily dismissed); *Banks v. New York Police Dep't*, No. 4:15CV3012, 2015 WL 1470475, at *2 (D. Neb. Mar. 31, 2015) (on initial review of pro se case, "the Court finds that there is no proper basis apparent from the face of the complaint for exercising personal jurisdiction over any of these defendants in the District of Nebraska, and this action should be dismissed as to them for that reason"); *Master v. Epps*, No. 1:14-CV-129, 2014 WL 6626439, at *1 (D.N.D. Nov. 21, 2014) ("courts in the Eighth, Ninth and Tenth Circuits have recognized that complaints may be dismissed on initial review when there is an obvious lack of personal jurisdiction") (collecting cases).

### 2. Defendants' Personal Involvement

The captions of Plaintiff's Complaint (Filing No. 1) and Supplemental Complaint (Filing No. 17) include three individual Defendants—Nadine Garcia, Lisa Pachecco, and Shawna Carpenter. In the body of the Complaints, only Defendant Carpenter is alleged to have engaged in any misconduct ("the Executive Director of North Platte Housing Authority . . . has refused to respond or grant my hearing" (Filing No. 17 at CM/ECF p. 2)). The other two individual Defendants are never mentioned in the body of the Complaints.

"A complaint that only lists a defendant's name in the caption without alleging that the defendant was personally involved in the alleged misconduct fails to state a claim against that defendant." *Banks*, 2015 WL 1470475, at *2; *see also Krych v. Hvass*, 83 Fed. Appx. 854, 855 (8th Cir. 2003) (unpublished) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (holding that court properly dismissed pro se complaint where complaint did not allege that defendant committed specific act and complaint was silent as to defendant except for his name appearing in caption)).

Plaintiff will be given leave to file an Amended Complaint to allege specific and detailed facts describing the individual Defendants' personal involvement in the

alleged misconduct, in the absence of which Plaintiff's claims against these Defendants will be dismissed for failure to state a claim.

**B. Fair Housing Act**

Plaintiff purports to bring claims under the Fair Housing Act ("FHA"), as amended, 42 U.S.C. § 3601, *et seq*. Liberally construed, Plaintiff's Complaints suggest retaliation and disparate-treatment claims under the FHA.

**1. Retaliation**

Section 3617 of Title 42 of the United States Code provides a civil remedy and "prohibits retaliation against any person on account of his having exercised or enjoyed a right granted or protected by the FHA." *Gallagher v. Magner*, 619 F.3d 823, 838 (8th Cir. 2010). This statute makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . , any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Unlawful conduct under this section includes "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. § 100.400(c)(5).

"To state a claim for retaliation under the FHA, Plaintiff must show: (1) [he] engaged in a protected activity; (2) Defendant was aware of the activity; (3) Defendant took adverse action against [the plaintiff]; and (4) there is a causal link between the adverse action and the protected activity." *United States v. Edmunds*, No. 15-CV-2705, 2016 WL 7670605, at *4 (D. Minn. Dec. 6, 2016), *report and recommendation adopted*, No. CV 15-2705, 2017 WL 102964 (D. Minn. Jan. 10, 2017).

Plaintiff alleges that the North Platte Housing Authority revoked an offer of housing and claimed Plaintiff owed money to HUD once the Authority learned

7

Plaintiff had been a witness in a separate fair-housing-enforcement case. He also alleges that the Colorado Housing Authority and HUD retaliated against Plaintiff and his family for their participation in "civil rights investigation and enforcement" and because Plaintiff succeeded in obtaining a previous "fair housing settlement" against Defendants.

These allegations, taken as true, assert that Plaintiff engaged in protected activity by serving as a witness and assisting in obtaining a settlement in a separate fair-housing case; that Defendants were aware of this protected activity; and that after the North Platte Housing Authority learned of Plaintiff's protected activity, the Authority revoked an offer of housing that had been extended to Plaintiff and falsely claimed Plaintiff owed money to HUD. This is enough to state a plausible claim of retaliation under the FHA. *See, e.g., Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363 (8th Cir. 2003) (plaintiff's assertion that landlord threatened to evict him as reprisal for his complaint that tenants were engaging in disability harassment was sufficient to allege retaliation claim under FHA).

**2. Disparate Treatment**

The FHA forbids discrimination "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter" and "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling" "because of a handicap[2] of" the prospective buyer or renter, a person residing in or intending to reside in the dwelling, or any person associated with the buyer or renter. 42 U.S.C. § 3604(f)(1) & (f)(2).

---

[2]"Handicap" for purposes of the FHA means "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).

"Disparate-treatment claims under the FHA are tested under the same framework as Title VII disparate-treatment claims." *Gallagher*, 619 F.3d at 831 (citing *Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924, 926 (8th Cir. 1993) (applying the three-stage Title VII analysis to a FHA disparate treatment claim)). "Proof of discriminatory purpose is crucial for a disparate treatment claim," with a plaintiff being required to "produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas*[3] burden-shifting framework."[4] *Id*.

Plaintiff's Complaints allege that he and his family "are persons with disabilities who suffer from chronic health conditions expected to end in death"; the Defendants illegally terminated and refused to reinstate his and his family's housing assistance; and the Colorado Housing Authority deliberately prevented him and his family from participating in "housing programs for persons with disabilities . . . by putting false and misleading information into the HUD EIV reporting system and

---

[3]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[4]If the burden-shifting framework is applied, Plaintiff must make a prima facie showing of discrimination by a preponderance of the evidence. *See McLain v. Andersen Corp.*, 567 F.3d 956, 967 (8th Cir. 2009) (setting forth burden-shifting analysis for disability-discrimination claim).

> To establish a prima facie case under § 3604(f), [Plaintiff] must show that she was denied housing or not offered the same terms, conditions or privileges of rental under circumstances that give rise to a reasonable inference of unlawful discrimination. If [Plaintiff] sets forth a prima facie case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for their actions. The burden then shifts back to [Plaintiff] to demonstrate that Defendants' justification is pretextual.

*Groteboer v. Eyota Econ. Dev. Auth.*, 724 F. Supp. 2d 1018, 1023 (D. Minn. 2010) (internal citations omitted).

instructing other public housing agencies to deny the plaintiffs access to[]housing programs."

While Plaintiff clearly alleges that he and his family's housing assistance was terminated in retaliation for their involvement in a separate housing-assistance case that resulted in a judgment against the government, Plaintiff does not allege that the reason for the termination of his housing assistance was his or a family member's "handicap." Plaintiff alleges that he and one of his family members are disabled, but he never asserts that he was denied housing or not offered the same terms, conditions, or privileges of rental because of those disabilities. Further, it is unclear what type of "false and misleading" information was entered into the "HUD EIV" system, whether any of the named defendants participated in the entry of such information, and how the entry of this information prevented Plaintiff and his family from participating in "housing programs for persons with disabilities." (Filing No. 1 at CM/ECF p. 4.)

Plaintiff will be given leave to file an Amended Complaint to allege specific and detailed facts stating a disparate-treatment claim under the FHA, in the absence of which such claim will be dismissed for failure to state a claim.

## C. Americans With Disabilities Act & Rehabilitation Act

Plaintiff makes conclusory allegations that Defendants violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" is defined in part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1).

To state a prima facie claim under Title II of the ADA, Plaintiff must show "1) he is a person with a disability[5] as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Clayborne v. City of Lincoln*, No. 8:17CV481, 2018 WL 4915838, at *4 (D. Neb. Oct. 9, 2018) (citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)). The elements of a claim under the Rehabilitation Act are the same, with the additional requirement that the plaintiff show that the program or activity from which he is excluded receives federal financial assistance. *Randolph*, 170 F.3d at 858.

Plaintiff does not allege that he is qualified for the housing at issue, that he was excluded from such housing because of his or a family member's disability, and that the housing assistance to which he refers is indeed Section 8 housing that receives federal financial assistance. In short, Plaintiff has not plead factual content that would allow the court to draw the reasonable inference that he was subject to disability discrimination under the ADA and Rehabilitation Act. *See Iqbal*, 556 U.S. at 678 (explaining that "labels and conclusions," "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a viable claim for relief).

---

[5]The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual"; "a record of such an impairment"; or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as operations of major bodily functions. *See* 42 U.S.C. § 12102(2).

Plaintiff will be granted leave to file an Amended Complaint that sets forth ADA and Rehabilitation Act claims upon which relief may be granted. Plaintiff should note that Defendants cannot be sued in their individual capacities under Title II of the ADA or under section 504 of the Rehabilitation Act. *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014); 42 U.S.C. § 12132 (Title II provides disabled individuals redress for discrimination by a "public entity"); 42 U.S.C. § 12131(1) ("pubic entity" does not include individuals).

**D. Section 1983 (Procedural Due Process/Equal Protection)**

While Section 1983 does not itself create any substantive rights, it grants an avenue of relief to a plaintiff who has been deprived of an existing constitutional or federal statutory right by a person acting under color of state law. Here, Plaintiff appears to be alleging that he was denied procedural due process and equal protection when his family's housing benefits were terminated.

**1. Procedural Due Process**

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to state a procedural-due-process claim, a plaintiff must allege that (1) he suffered a deprivation of a constitutionally protected interest in life, liberty, or property, and (2) such deprivation occurred without due process of law. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (italics omitted).

The Supreme Court has held that welfare benefits "are a matter of statutory entitlement for persons qualified to receive them. Their termination involves state action that adjudicates important rights." *Goldberg v. Kelly*, 397 U.S. 254, 261-62

(1970). The *Goldberg* court established due process requirements for termination of public assistance, and this standard has been applied to Section 8 programs. *Hunter v. Underwood*, 362 F.3d 468, 477 (8th Cir. 2004) ("Section 1983 is the proper means by which a public housing tenant may challenge the action of a state public housing agency that violates the United States Housing Act."; § 1983 claim asserting that Des Moines Housing Authority and its agents deprived plaintiff of rights under Due Process Clause and federal Housing Act regulations by attempting to terminate her public-housing lease without giving appropriate notice); *Jackson v. Des Moines Mun. Hous. Agency*, No. 4:07-CV-00438, 2008 WL 10707693, at *3 (S.D. Iowa June 4, 2008) (citing *Goldberg*, 397 U.S. at 261) (annulling termination of Section 8 housing subsidy for violation of procedural due process and holding that "[t]he Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits termination of public assistance benefits without a prior evidentiary hearing") (collecting cases).

"The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *Goldberg*, 397 U.S. at 267 (internal quotation marks and citations omitted). In the context of discontinuation of public-assistance payments to a welfare recipient, procedural due process requires "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Id*. at 267-68.

Here, Plaintiff alleges that his housing assistance was "illegally terminated" and that he has "repeatedly appealed" to the "HUD Fair Housing and Equal Opportunity office" and "HUD has failed to protect" him and his family. (Filing No. 1 at CM/ECF p. 4.) Plaintiff also asserts that the North Platte Housing Authority failed to provide "accessible notices and communication," an appeal, and a hearing, despite Plaintiff's weekly requests by fax, phone, and email. (Filing No. 17 at CM/ECF p. 1.)

Plaintiff's allegations are limited to the lack of due process afforded to him *after* his housing assistance was terminated—that is, Plaintiff asserts that the lack of "postdeprivation" procedures available to him violated his due-process rights. As currently drafted, Plaintiff's Complaints do *not* allege that the lack of "predeprivation" procedures violated his due-process rights, such as allegations that he did not receive notice detailing the proposed termination of his housing benefits and the reasons supporting the termination, or that he did not receive an effective opportunity to present a defense before the termination of his housing benefits by confronting adverse witnesses and presenting his own arguments and evidence orally in a hearing. *Goldberg*, 397 U.S. at 267-68.

Plaintiff will be given leave to file an Amended Complaint to clarify the nature of his procedural-due-process claim.

### 2. Equal Protection

Plaintiff's Supplemental Complaint alleges that the North Platte Housing Authority denied Plaintiff protections and rights afforded to other disabled housing participants, such as "local preference" and "homeless preference/ranking," and "routinely provid[ed] affordable housing to single mothers without subjecting them to additional investigation . . . or harassing their family members or the employers of family members who are not on the housing application." (Filing No. 17 at CM/ECF p. 2.)

Liberally construed, Plaintiff's Supplemental Complaint implies a "class-of-one" equal-protection claim where a plaintiff does "'not allege membership in a class or group,'" *Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)), but instead "alleges that a defendant intentionally treated [him] differently from others who are similarly situated and that no rational basis existed for the difference in treatment." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011); *see also Gallagher v. Magner*, 619 F.3d 823, 839 (8th Cir. 2010) (same). "To be similarly situated for purposes of

a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Robbins*, 794 F.3d at 996 (internal quotation and citation omitted).

Plaintiff alleges that the North Platte Housing Authority treated him differently from "other disabled housing participants" and "single mothers." However, Plaintiff has failed to allege any facts relevant to how these groups are similarly situated to him. In the absence of such allegations, Plaintiff fails to state an equal-protection claim. *See Hill v. Grp. Three Hous. Dev. Corp.*, 799 F.2d 385, 394 (8th Cir. 1986) (affirming dismissal of equal-protection claim when plaintiffs failed to allege that Section 8 housing applicants were similarly situated to applicants for conventional public housing); *see also Robbins*, 794 F.3d at 996 (it was "not enough" to state class-of-one equal-protection claim when plaintiffs failed to allege facts, with supporting details, showing they were similarly situated to comparators).

Plaintiff will be granted leave to file an Amended Complaint which alleges a plausible claim to relief under the Equal Protection Clause.

### E. HUD Regulations/HCV Program

Plaintiff's Complaints reference the "HCV Program" and request "[r]einstatement of the illegally terminated Housing Choice Voucher," and the Civil Cover Sheet filed with Plaintiff's initial Complaint lists as a cause of action "HUD REGS HCV PROGRAM." (Filing No. 1 at CM/ECF p. 7.) The court assumes Plaintiff is referencing the program described in Title 24, Part 982, of the Code of Federal Regulations entitled "Section 8 Tenant-Based Assistance: Housing Choice Voucher Program." These regulations describe the program as federally financed, locally administered public housing assistance under Title II, Section 8, of the Housing and Community Development Act of 1974, Pub. L. No. 93-383, 88 Stat. 633 (codified at 42 U.S.C. § 1437f).

15

This claim must be dismissed because "Congress did not intend to create enforceable rights for individual applicants nor to allow private enforcement of the Section 8 program. Thus . . . plaintiffs have no implied private right of action under Section 8." *Hill*, 799 F.2d at 394; *see also Cain v. Aradhyula*, No. 4:15-CV-1504, 2015 WL 5829819, at *2 (E.D. Mo. Oct. 6, 2015) ("there is no implied right of action under Section 8") (collecting cases); *Jackson v. Metro. Council HRA Mgmt. Ass'n*, No. CIV. 10-2370, 2012 WL 4470439, at *11 (D. Minn. May 17, 2012), *report and recommendation adopted*, No. CIV. 10-2370, 2012 WL 4470438 (D. Minn. Sept. 27, 2012), *aff'd*, 508 F. App'x 586 (8th Cir. 2013) (there is no private right of action under Section 8).

## IV. MISCELLANEOUS MOTION

Leila McCoy, who was originally named as a Plaintiff in this action, has filed a Motion to be Kept on Case as Plaintiff (Filing No. 9). In this court's October 30, 2018, order (Filing No. 8), Leila McCoy and Corey Robinson were removed as Plaintiffs in this action because Clyde McCoy II—who filed and signed the Complaint and has been granted leave to proceed in forma pauperis—may not represent other Plaintiffs in federal litigation, and he may not sign documents on their behalf. *Petties v. Stony Ridge Apartments*, No. 4:15CV3118, 2016 WL 697093, at *2 (D. Neb. Feb. 19, 2016) (it is improper for non-lawyer to sign papers in place of, or to otherwise represent, parties other than themselves) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1333, at 513 & n.15 (2004)). The court directed that if Leila McCoy and Corey Robinson seek relief, they must file such a request themselves or through an attorney. (Filing No. 8 at CM/ECF p. 2 n.1.) For these same reasons, Leila McCoy's Motion to be Kept on Case as Plaintiff (Filing No. 9) will be denied.

## V. CONCLUSION

Plaintiff's Complaints fail to allege facts establishing this court's personal jurisdiction over the Colorado Defendants and describing the individual Defendants'

personal involvement in the alleged misconduct. Plaintiff's Complaints set forth a plausible claim of retaliation under the Fair Housing Act, as amended. Plaintiff's "HUD Regulations/HCV Program" claim will be dismissed for failure to state a claim upon which relief can be granted. Plaintiff's remaining allegations fail to state a claim upon which relief can be granted. On the court's own motion, however, Plaintiff will be allowed to file an Amended Complaint to correct the various pleading deficiencies noted above. Accordingly,

IT IS ORDERED:

1. Plaintiff is granted leave to file an Amended Complaint in the following particulars:

   a. alleging specific, detailed, and truthful facts, if any, which establish that Defendants Colorado Springs Housing Authority, Nadine Garcia, and Lisa Pachecco have sufficient contacts with the State of Nebraska such that this court can exercise personal jurisdiction over them.

   b. alleging specific, detailed, and truthful facts describing the individual Defendants' personal involvement in the alleged misconduct.

   c. alleging a plausible claim of disparate treatment under the Fair Housing Act, as amended.

   d. alleging a plausible claim under the Americans With Disabilities Act and the Rehabilitation Act.

   e. clarifying the nature of Plaintiff's procedural-due-process claim.

   f. alleging a plausible equal-protection claim.

2. Plaintiff shall file an Amended Complaint that states a claim upon which relief may be granted on or before March 6, 2019. Failure to file an Amended Complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

3. The court will conduct further review of Plaintiff's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915.

4. Plaintiff has set forth a plausible claim of retaliation under the Fair Housing Act, as amended, and such claim shall go forward after the court reviews Plaintiff's Amended Complaint.

5. Plaintiff's "HUD Regulations/HCV Program" claim is dismissed for failure to state a claim upon which relief can be granted because there is no implied private right of action under Title II, Section 8, of the Housing and Community Development Act of 1974, Pub. L. No. 93-383, 88 Stat. 633. Plaintiff shall not include such a claim in his Amended Complaint.

6. Leila McCoy's Motion to be Kept on Case as Plaintiff (Filing No. 9) is denied.

7. The Clerk of the Court is directed to set the following pro se case management deadline: March 6, 2019: check for amended complaint.

DATED this 5th day of February, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge